IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA L.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civil No.: 2:16-cv-01826-JE

OPINION AND ORDER

Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Renata Gowie, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Ryan Ta Lu
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

    Attorneys for Defendants

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

OPINION AND ORDER – 1

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff requests the Court remand this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

## Procedural Background

Plaintiff filed applications for SSI benefits and a period of disability and DIB on June 28, 2012, alleging she had been disabled since May 3, 2011. After her claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.

On October 3, 2014, a hearing was held before Administrative Law Judge (ALJ) Cecilia LaCara. Plaintiff and William Weiss, an impartial vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated January 7, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

On July 25, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1961 and was 53 years old at the time of ALJ LaCara's decision. Plaintiff graduated from college, has a Master's Degree in Social Work and has past relevant

work experience as a clinical supervisor, child advocate social service director, and family support social worker.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  *Tackett*, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id*.

## ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016.

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 3, 2011, the alleged onset date.

At the second step, the ALJ found that Plaintiff had the severe impairment of osteoarthritis.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925, 416.926).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the functional capacity to perform light work with the additional limitation that:

> [s]he can occasionally climb ramps and stairs. She cannot climb ladders, ropes or scaffolds. She can frequently balance and stoop. She can occasionally kneel, crouch and crawl. She can frequently handle and finger bilaterally. She must avoid concentrated exposure to extreme cold, excessive vibration, and hazardous machinery.

Tr. 27. In making her determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.

At Step Four of the disability analysis, the ALJ found that Plaintiff was able to perform her past relevant work as a clinical supervisor, child advocate social service director, and family support social worker as those positions are generally performed in the national economy.

Based upon her finding at Step Four, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, at any time from May 3, 2011, through the date of her decision.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ improperly rejected her subjective symptom allegations and improperly rejected the opinions of her primary care provider, Dr. Brian Conklin, and the consultative examiner, Dr. Michael Henderson.

### I. Plaintiff's Subjective Symptom Allegations

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1015 (citations omitted). Therefore, an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

When evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record, including the claimant's activities of daily living ("ADLs"); the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c); SSR 96-7p. Findings that are premised exclusively on a claimant's apparent character for truthfulness, rather than the listed factors, may constitute error. *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (general credibility findings are insufficient) (citations omitted). If substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

In a Function Report dated July 12, 2012, Plaintiff alleged that she could not walk or stand for more than a few minutes at a time, and that writing or using the computer for more than a few minutes caused pain and numbness in her hands. Her children do much of the housework and errands and wash their own laundry. Tr. 268. Plaintiff does her own laundry once a week. Tr. 270. She prepares meals daily, but it takes her about an hour to make a meal and she has to sit down often to rest. Tr. 268-269. She shops once or twice a week if her children go with her and

she uses a riding cart in the store. Tr. 270. Her pain medication can reduce her pain to below 7 on a scale of 1 to 10 but on bad days her pain is at a 9 or 10 even with medication. Tr. 273.

In a November 2012 Disability Report, Plaintiff alleged that she "cannot perform many activities of daily living independently such as cooking, cleaning, laundry or shopping." She alleged that her "constant pain" was at an 8 level on a scale of 1 to 10 and on days that were at a 10 she could not get out of bed. Tr. 299. Her pain has left her bedridden several times a month. Tr. 300.

At the hearing, Plaintiff testified that she experienced wide-spread, debilitating body pain and that after activities such as showering or going out, she would "probably be off [her] feet and wiped out for the next two or three days." Tr. 48. She testified that arthritis has caused some of the joints in her hands to become deformed, that her hands tremble, and she cannot use a regular size pen or pencil to write. Tr. 52. She cannot open lids on water bottles or jars of food and cannot type as well as she used to. Tr. 53. Her children help with the cooking, the household chores and the yard work and do their own laundry. Tr. 53-54. She uses a riding cart to go grocery shopping and her children have to go with her to help. Tr. 54. She walks with a cane and can only go about 20 yards before she is in pain. Tr. 56. She can sit for no more than an hour and stand in place no more than a minute. Id. She has a three-wheeled bicycle that she can ride around for a "couple of blocks." Tr. 59.

Here, there was no evidence of malingering and therefore the ALJ was required to provide clear and convincing reasons to support her rejection of Plaintiff's statements regarding the severity of her symptoms. The ALJ discounted Plaintiff's subjective symptom allegations as inconsistent with the medical record, inconsistent with her activities of daily living and because she found Plaintiff's lack of treatment suggested her symptoms were not as serious as alleged.

### A. Inconsistency with Medical Evidence

In her decision, the ALJ found Plaintiff's allegations to be inconsistent with the medical evidence. The ALJ provided a detailed summary of the medical record earlier in her decision. In explaining her assessment of Plaintiff's subjective symptom allegations, the ALJ iterated Plaintiff's allegations then specifically noted:

> . . . Dr. Wongsuwan found that she had normal gait and station (Ex. 13F). Dr. Henderson found she had normal gait, normal range of motion of the hands and wrists, intact fine motor activities, intact collateral and cruciate ligaments, and full strength in the upper extremities and ankles (Ex. 6F). FNP Brown found she had normal motor (Ex. 12F). FNP Phelps found she had normal motor and sensation (Ex. 12F).

Tr. 30.

Plaintiff argues that the ALJ's analysis of her subjective symptom testimony failed to meet the specificity requirements set out in *Brown–Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). Plaintiff also asserts that her symptom allegations were not inconsistent with the medical evidence. Plaintiff's reliance on *Brown-Hunter* is unavailing. First, in this case the ALJ did not just provide "only a general credibility finding" but instead provided specific reasons for discounting Plaintiff's testimony. Furthermore, the ALJ here set out sufficient factual detail and reasoning for this Court to "reasonably discern" the ALJ's path.

Plaintiff also argues that the medical evidence supports her symptom allegations. She points to findings in the record that she had an antalgic gait, walked with a cane, was assessed with severe obesity and that Dr. Henderson observed deformity of the DIP joint at the right fifth finger. Although Plaintiff points to a selection of findings to support her preferred reading of the medical evidence, variable interpretations of the medical evidence are insignificant when, as is the case here, the ALJ's interpretation is reasonable and based on substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## B. Activities of Daily Living

The ALJ also discounted Plaintiff's symptom allegations on the ground that her daily activities were inconsistent with those allegations. Tr. 30. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir.2014). The ALJ cited Plaintiff's ability to prepare meals daily, wash laundry, shop in stores once or twice a week, drive, ride a bicycle and have hobbies such as reading, watching television, knitting and gardening as inconsistent with allegations of constant and debilitating pain. Tr. 30.

The ALJ's rationale ignores the fact that Plaintiff reported preparing one meal daily and that it took her up to an hour to do so because of the need to take rest breaks; that she washed her own laundry once a week but that her children performed all other household chores and yardwork; that her children had to accompany her to the store and she required the use of a riding cart to shop; she could only drive for limited periods; she rides a three-wheeled bike "a couple of blocks" to help keep her joints limber but it is painful and she cannot ride two days in a row; she has not been able to knit recently, has to sit to garden and takes frequent breaks while doing crafts. Tr. 59, 268-273. The ALJ's paraphrasing and inaccurate representation of Plaintiff's reported activities does not support an adverse finding as to Plaintiff's subjective symptom allegations.

## C. Lack of Treatment

As to the final rationale, Plaintiff argues that the ALJ did not identify the lack of treatment in the record and the Commissioner appears to concede that this reason was invalid. I agree.

Here, two of the ALJ's three reasons for discounting Plaintiff's subjective symptom allegations were legally insufficient. If substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle*, 533 F.3d at 1162. However, an ALJ may not rely solely on a lack of corroborating medical evidence to discount a claimant's subjective allegations. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted) ("whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence"). *See also*, *Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).

As the lack of supporting objective medical evidence was the only legally valid reason offered, the ALJ improperly rejected Plaintiff's subjective symptom allegations. Because this error was prejudicial to Plaintiff and therefore not harmless, the ALJ's credibility finding is reversed.

**II. Medical Opinion Evidence**

Plaintiff argues the ALJ erred by rejecting the opinions of treating physician, Dr. Conklin, and consultative examiner, Dr. Henderson.

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Id*. A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Likewise, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, *id*., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. *Andrews*, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830–31.

### A. Dr. Conklin

Dr. Conklin was one of Plaintiff's primary care providers. In a September 2014 medical source statement, he wrote that he had been treating Plaintiff since 2007. Tr. 625 Dr. Conklin indicated that Plaintiff's medical conditions were cardiomyopathy, hypertension, osteoarthritis, depression, anxiety, and lymphoma. Id. He opined that Plaintiff was limited to standing and/or walking 15 minutes at one time and one hour total in a day. Tr. 626. He opined that Plaintiff was

limited to sitting 30-45 minutes at a time and no more than 4 hours in an eight-hour workday. Id. She should never climb, balance, crouch, or crawl and should only occasionally kneel, reach overhead or engage in handling or fingering. Id. He attributed the limitation in her upper extremities to "fatigability" and other limitations to chronic pain and cardiomyopathy. Dr. Conklin further opined that Plaintiff was markedly limited in her ability to maintain concentration and attention for extended periods and complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 627.

The ALJ gave Dr. Conklin's opinion "some weight" because he had treated Plaintiff. Tr. 31. However, the ALJ incorporated none of the limitations set forth in Dr. Conklin's medical source statement, finding his statement "conclusory" and heavily reliant upon Plaintiff's subjective reports of her symptoms and limitations. Id. The ALJ also rejected Dr. Conklin's opinion regarding Plaintiff's mental functioning as resting "at least in part on an assessment of impairments outside the doctor's area of expertise." Id.

An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). However, an ALJ errs by rejecting medical opinion "while doing nothing more than ignoring it . . . or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013.

Here, Dr. Conklin's opinion was not brief, conclusory or inadequately supported by clinical findings. Although his ultimate opinion was conveyed in primarily checklist format, the checklist limitations were explained by Dr. Conklin's references to Plaintiff's diagnosed and

medically determinable impairments and by multiple pages of treatment records that span more than 7 years. In combination, these records, Dr. Conklin's references to Plaintiff's diagnoses, and the checklist explain and support the doctor's opinion.

Additionally, the record demonstrates that Dr. Conklin's opinion as to Plaintiff's limitations was not, as the ALJ asserted, heavily reliant on Plaintiff's subjective reports. Dr. Conklin's lengthy treatment history includes Plaintiff's reports of pain and fatigue but also clinical observations and objective medical findings. Furthermore, "an ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports <u>that have been properly discounted as incredible</u>. *Tommasetti*, 533 F.3d at 1041 (citing *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir.1999))(emphasis added). As discussed above, the ALJ failed to properly discount Plaintiff's subjective symptom allegations.

Finally, the ALJ's rejection of Dr. Conklin's opinion regarding Plaintiff's mental functions on the grounds that it was outside his area of expertise was erroneous. The Commissioner now argues that the rejection was supported by the absence of clinical evidence in Dr. Conklin's treatment notes and the conflicting opinions of State Agency reviewing psychological consultants. However, these were not reasons advanced by the ALJ and this Court will not now consider them. *See Bray*, 554 F.3d at 1225.

Treating physicians are in the best position "to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ's conclusion that Dr. Conklin's opinion should be given less weight because it was beyond the scope of his area of expertise was not, on its own, legally sufficient support for discounting the doctor's opinion. *See Sprague*, 812 F.2d at 1232 (duly licensed treating physician can practice and render psychiatric

services and is competent to give a psychiatric opinion as to the patient's "mental state as it relates to her physical disability").

The ALJ here failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Conklin's opinion.

**B. Dr. Henderson**

Dr. Henderson reviewed Plaintiff's medical records, performed a physical examination and interviewed Plaintiff. In an evaluation dated September 1, 2012, Dr. Henderson assessed Plaintiff with osteoarthritis, history of cardiomyopathy and fatigue. On physical examination he noted that Plaintiff rose from her chair with some effort, that her gait was "a bit wide based but this is likely because of her size." She had some difficulty with tandem walking, could walk on her toes but not on her heels due to fear of losing her balance. Plaintiff's hands showed changes consistent with osteoarthritis with Heberden's nodes bilaterally but no significant swelling and all joints were aligned correctly with no deformity noted. She could completely extend and flex all fingers and range of motion appeared "essentially normal" in the small joints of the hands and wrists. Fine motor activity appeared intact. Plaintiff's knees were aligned correctly and without swelling erythema or deformity. Range of motion in hands and knees appeared "essentially normal." Plaintiff experienced pain on palpation of the DIP joints but not the PIP joints, wrists, or metacarpophalangeal joints. Muscle bulk and tone were normal and equal in the upper and lower extremities. Strength was 5/5 in the upper extremities and 4/5 at the knees with some limitation from pain. Tr. 478.

Dr. Henderson opined that based on Plaintiff's history and exam, he could not find objective evidence to limit sitting or standing but that due to obesity and deconditioning, he would limit Plaintiff to walking 20 minutes at a time. He opined that Plaintiff could go up and

down stairs but slowly and would require the use of a handrail. He opined that Plaintiff's fine motor activity was intact but "likely painful if repetitive." He could not objectively verify that Plaintiff's pain was as severe as she stated and he expected she would be able to write 10 minutes at a time and use a keyboard 30 minutes at a time. Tr. 479,

The ALJ gave Dr. Henderson's opinion "some weight" as he had examined Plaintiff and his opinion was "somewhat consistent" with his clinical findings. Tr. 30. However, the ALJ concluded that "the record as a whole supports the limitations set forth in the above residual functional capacity." Id. Plaintiff argues that this was neither a specific nor legitimate reason for not incorporating the functional limitation assessed by Dr. Henderson.

The Commissioner argues that the inconsistency of a medical opinion with the record as a whole is a valid reason for rejecting that opinion and that inconsistencies between Dr. Henderson's "benign" findings and his opinion supported the ALJ's rejection of that opinion.

The Commissioner characterizes the ALJ's decision as finding Dr. Henderson's opinion "only 'somewhat consistent with the doctor's clinical findings." Def. Brief at 15. However, the ALJ wrote, "The opinion is given some weight because the doctor examined the claimant and it is somewhat consistent the doctor's clinical findings." Tr. 30. The ALJ relied on Dr. Henderson's opinion as to standing and walking limitations to support her rejection of the limitations assessed by State Agency Medical Consultants Drs. Pritchard and Jensen. Tr. 31.

The ALJ failed to address which of Dr. Henderson's clinical findings she found inconsistent with his opinion. *See Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). Furthermore, the ALJ did not find, as the Commissioner argues, that Dr. Henderson's opinion was inconsistent with the record as a whole. Instead, she wrote that the record as a whole supported her own RFC assessment. The ALJ identified no evidence in the record that supported

why her assessment, rather than Dr. Henderson's was correct. Such conclusory statements fail to meet the level of specificity required. *See Id.* at 421-422 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

The ALJ failed to provide specific and legitimate reasons for discounting Dr. Henderson's opinion. Such error was not harmless because the walking, fingering and handling limitations assessed by Dr. Henderson were more restrictive than those assessed by the ALJ and were not included in Plaintiff's RFC or communicated to the VE.

**III. Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited. *Garrison*, 759 F.3d at 1021 (citations omitted).

Even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)). "The touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error. *Brown-Hunter*, 806 F.3d at 495 (citations omitted).

Here, further proceedings are required because the record is incomplete. Although the ALJ did not provide rationales sufficient to adequately reject the medical opinions of Drs. Conklin and Henderson or Plaintiff's subjective symptom allegations, these errors do not necessarily direct that the opinions and allegations should be credited as true. The ALJ is the proper arbiter for weighing the evidence, and here the record is mixed with regard to Plaintiff's allegations, the objective medical evidence and the functional limitations as opined by the doctors. Furthermore, the ALJ did not reach Step Five of the sequential evaluation process. Thus, even if Plaintiff is unable to perform her past relevant work, the record is incomplete as to whether she would be able perform other work that exists in significant numbers in the national economy. As there are outstanding issues that must be resolved before a determination of disability can be made, this Court does not reach the question of whether the erroneously

discredited evidence should be credited as true. Accordingly, remand for further proceedings is appropriate. *Garrison*, 759 F.3d at 1020-1021.

Upon remand, the Appeals Council is directed to instruct the ALJ either to credit as true the opinions of Dr. Conklin and Henderson and Plaintiff's subjective symptom allegations or provide legally sufficient reasons for their rejection. To the extent the opinions and allegations are credited, the ALJ should reassess Plaintiff's RFC. Step Four and, if required, Step Five of the sequential evaluation analysis should be reevaluated with the assistance of a vocational expert as necessary.

## Conclusion

For the reasons set forth above, the Commissioner's final decision was not based on substantial evidence or free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED, and this action is REMANDED for further proceedings consistent with this Opinion and Order.

DATED this 7th day of February, 2019.

                                          /s/ John Jelderks
                                          John Jelderks
                                          U.S. Magistrate Judge